IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM PAUL BURCH, | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 3:18-CV-2731-M-BH |
| | § | |
| FREEDOM MORTGAGE | § | |
| CORPORATION, LOAN CARE | § | |
| SERVICING CENTER, AND | § | |
| JPMORGAN CHASE BANK, | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Plaintiff's Motion for Stay*, filed October 31, 2018 (doc. 7), and *Plaintiff's Motion to Stay*, filed December 20, 2018 (doc. 46). Based on the relevant filings and applicable law, the motions should be **DENIED**.

## I.  BACKGROUND

This case involves a dispute over property located at 1713 Enchanted Lane, Lancaster, Texas 75146 (the Property). (doc. 6 at 4.)[2] On September 20, 2018, William Paul Burch (Plaintiff) filed this suit against Freedom Mortgage Corporation (Freedom), Loan Care Servicing Center (LCSC), and JP Morgan Chase Bank (Chase) (collectively Defendants). (*See* doc. 1-3 at 8-45.)

On or about November 17, 2006, Plaintiff's wife executed a promissory note (the Note) in the original principal amount of $104,250 (the Loan), payable to the order of Freedom as well as a deed of trust (the Deed of Trust) securing payment of the Note. (docs. 1-3 at 18-36; 6 at 4.) Plaintiff also executed the Deed of Trust. (*See* doc. 1-3 at 35-36.) The Deed of Trust was made for

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

the benefit of Mortgage Electronic Registration Systems, Inc. (MERS), acting solely as nominee for

Freedom and its successors and assigns. (doc. 14-1 at 3.) Plaintiff contends that LCSC "was hired

to service the Loan, effective November 28, 2006." (doc. 6 at 4.) On April 1, 2007, Chase began

servicing the Loan. (docs. 1-3 at 37; 6 at 4.)

On December 1, 2008, Plaintiff and his wife filed for bankruptcy under Chapter 11 of the

United States Bankruptcy Code. *See In re William Burch and Juanita Burch,* No. 08-45761-rfn11

(Bankr. N.D. Tex.) (the First Bankruptcy). On December 9, 2009, the bankruptcy court entered an

order confirming their Third Amended Plan of Reorganization, which reaffirmed Chase's status as

the mortgage holder on the Property and required Plaintiff to enter into a new note in the original

principal amount of $68,000. (*Id.,* doc. 246 at 13; doc. 6 at 4.) The First Bankruptcy was closed on

September 11, 2012.

On November 27, 2012, MERS assigned its interest in the Deed of Trust to Freedom.[3] (docs.

14-1 at 23-24; 54 at 25-26.) On December 28, 2012, Plaintiff filed for bankruptcy under Chapter

13 of the Bankruptcy Code. *See In re William Paul Burch*, No. 12-46959-mxm7 (Bankr. N.D. Tex.)

(the Second Bankruptcy). The Second Bankruptcy was converted to Chapter 11 on December 23,

2013 (*id.*, doc. 100), and to Chapter 7 on January 30, 2018 (*id.*, doc. 354). On February 1, 2016, the

bankruptcy court entered an order confirming Plaintiff's Plan of Reorganization, which retained

Freedom's lien on the Property in the amount of $77,547.51. (*Id.,* doc. 188 at 11; doc. 6 at 6-7.) On

June 13, 2018, the bankruptcy court entered an order of discharge under 11 U.S.C. § 727. (Second

Bankruptcy, doc. 475.)

On September 20, 2018, Plaintiff sued Freedom, LCSC, and Chase in state court alleging

---

[3] MERS executed a second assignment of its interest in the Deed of Trust to Freedom on January 13, 2014. (*See* doc. 54 at 28-29.)

fraud, gross negligence, violations of § 12.002 of the Texas Civil Practice and Remedies Code, and

violations of the Texas Deceptive Trade Practices Act (DTPA).  (*See* doc. 1-3 at 8-45.)  On

September 27, 2018, he filed an amended complaint that added his wife as a plaintiff, abandoned

his original claims, removed LCSC and Chase as defendants, and asserted new claims against

Freedom for quiet title, slander of title, and breach of contract, and that sought to enjoin it from

foreclosing on the Property.  (*See* doc. 1-3 at 67-83.)  On October 10, 2018, the state district court

issued a temporary injunction restraining Freedom from foreclosing on the Property.  (*Id.* at 97-98.)

On October 16, 2018, Freedom removed the suit, asserting diversity jurisdiction under 28

U.S.C. § 1332.  (*See* doc. 1.)  On October 28, 2018, Plaintiff filed a second amended complaint,

which added the claims in his original complaint and LCSC and Chase as defendants.[4]  (*See* doc. 6.)

It asserts claims for fraud, gross negligence, violations of § 12.002 of the Texas Civil Practice and

Remedies Code, and violations of the DTPA and seeks "monetary relief of more than $10,000,000,"

compensatory, punitive, and exemplary damages, court costs, "reasonable attorney's fees pursuant

to state statute," and pre- and post-judgment interest.  (*Id.* at 2-9.)

On October 31, 2018, Plaintiff filed a "Motion for Stay." (doc. 7.)  Freedom and Chase

responded on November 15, 2018 (docs. 20, 21), and Plaintiff replied on November 20, 2018 (doc.

25.)  On December 20, 2018, Plaintiff filed a "Motion to Stay."  (doc. 46 at 1.)  Chase responded

on January 7, 2019 (doc. 51), and Freedom responded on January 10, 2019 (doc. 58).  Plaintiff filed

his reply on January 21, 2019.  (doc. 59.)  Both motions are ripe for consideration.[5]

---

[4]  Plaintiff's wife is not listed as a plaintiff in the second amended complaint, and neither are the claims that were asserted against Freedom in the first amended complaint.

[5]  LCSC did not file a response to either motion.

## II.  TEMPORARY RESTRAINING ORDER

Because Plaintiff's motions seek to enjoin Defendants from foreclosing, selling, transferring, or liquidating "assets within the State of Texas," including the Property, they are liberally construed as a motion for a temporary restraining order (TRO) and a request for preliminary injunction.

A party may obtain a TRO without notice to the other side if it satisfies the necessary requirements, which are:

> (A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B)  the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  The party seeking a TRO has the burden to show entitlement to it.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Plaintiff does not allege he has given notice to Defendants of his request for injunctive relief, nor has he provided a written certification of his efforts to give notice or proffering reasons why notice should not be required.  Neither his second amended complaint nor his motions clearly show an immediate, irreparable injury, loss, or damage that will result before Defendants can be heard in opposition.  His motions are subject to denial for this reason alone.

In addition, "[t]o obtain a temporary restraining order, [Plaintiff] must show entitlement to a preliminary injunction." *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2011 WL 3157214, at *1 (N.D. Tex. July 26, 2011) (citations omitted).  As discussed below, he has not made this showing.

## III. PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear

4

showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citation omitted). The party seeking the preliminary injunction bears the burden of persuasion on *all* four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (emphasis added).

## A.      Likelihood of Success

To establish the first element of likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011). The first element is assessed by looking at standards provided by substantive law. *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

### 1.      *Fraudulent Lien*

Chapter 12 of the Texas Civil Practices and Remedies Code provides, in relevant part:

A person may not make, present, or use a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

> (3) intent to cause another person to suffer:

5

          (A) physical injury;

          (B) financial injury; or

          (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a).

Plaintiff claims that under the confirmation plan in the First Bankruptcy, Defendants were required to issue a new mortgage note on the Property; because a new note was not issued, the old note was "invalidated with the confirmation of the Bankruptcy," which means there is "no valid reason for there to be a Deed of Trust." (doc. 6 at 4-6.) He also claims that "Chase sold the voided mortgage note to Freedom, thus committing fraud and putting [him] in a precarious situation as Freedom attempted to collect on the old note." (*Id.* at 6.)

Plaintiff fails to allege any facts showing that Defendants had knowledge that any documents were fraudulent, that they intended that they be given the same legal effect as a valid lien, or that they intended to injure him or cause him mental anguish or emotional distress. He has accordingly failed to establish a likelihood of success on the merits of this claim.

     **2.**    ***DTPA***

The DTPA's purpose is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty . . . ." Tex. Bus. & Com. Code Ann. § 17.44 (West 1995). To maintain a cause of action under the DTPA, a plaintiff must establish that "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1) (West 2005). The DTPA defines "consumer" in relevant part, as "an individual

. . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code

Ann. § 17.45(4) (West 2017).  To be a consumer, "a person must have sought or acquired goods or

services by purchase or lease" and those goods or services "must form the basis of the complaint."

*Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp.2d 747, 765 (N.D. Tex. 2012) (citing

*Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).

Because the lending of money is not a good or service, a borrower whose sole objective is

to obtain a loan is not a consumer under the DTPA. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114,

123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, (Tex. 1980)).  "A

mortgagor qualifies as a consumer under the DTPA," however, "if his or her primary objective in

obtaining the loan was to acquire a good or service, and that good or service forms the basis of the

complaint." *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 724-25 (5th Cir. 2013) (citing to

*Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Riverside Nat'l Bank*,

603 S.W.2d at 175).

Plaintiff's DTPA claim is premised on Defendants' allegedly deceptive actions concerning

the purported servicing of the mortgage, the "non-compliance to the [First Bankruptcy] Plan," and

the attempted foreclosure of the Property.  (*See* doc. 6 at 4-6.)  His claim is not based on their

alleged actions related to financing the purchase of the Property, and he has not alleged or shown

that the Property is the basis of his DTPA claim.  *See Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x

274, 279 (5th Cir. 2014) ("[Plaintiff] is not a consumer under this definition because the basis of her

claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services

acquired in the original transaction"); *Gatling v. CitiMortgage, Inc.*, No. H-11-2879, 2012 WL

3756581, at *13 (S.D. Tex. Aug. 28, 2012) (holding the plaintiff was not a consumer under the

DTPA where "her claim [was] based on acts occurring years after the financing transaction with [the defendant]" and finding "how [the plaintiff's] loan was administered–and the problems subsequently attending that administration–'is merely incidental to [her] prior objective to purchase a residence' ") (citing *Woods v. Bank of Am., N.A.*, Civ. A. No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012)).  Because Plaintiff has not shown he is a consumer under the DTPA, he has not shown a likelihood of success on the merits on this claim.

### 3. *Common Law Fraud*

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted).[6]

Plaintiff's claim for common law fraud is based on Defendants' purported failure to comply with the First Bankruptcy Plan. (*See* doc. 6 at 6.) He alleges that "one of the companies bought the old, invalid mortgage note, from the insurance company for a fraction of the amount stated on the mortgage note." (*Id.* at 6.) He also alleges that "[p]ayments were made to Chase under the Bankruptcy Plan beginning in January 2009 but were returned to Plaintiff uncashed." (*Id.*) He contends that "Chase committed fraud by attempting to collect[] on an invalid note" and because it "sold the voided mortgage note to Freedom," which placed him "in a precarious situation as Freedom attempted to collect on the old note." (*Id.*)

Plaintiff fails to allege "the who, what, when, where, and how" as required under Rule 9(b). *See Benchmark Electronics*, 343 F.3d at 724. Further, his allegations cannot plausibly entitle him to relief because they do not allege that Defendants made a material false representation to him upon which he relied to his detriment. *See Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-cv-3680, 2012 WL 2568178, at *4 (S.D. Tex. June 28, 2012) (dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*") (emphasis added). The second amended complaint also fails to allege any facts that support his claim that Defendants had knowledge or acted recklessly. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)

---

[6] A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) . . . [because] the plaintiffs must set forth *specific facts* supporting an inference of fraud[,] . . . such as identify[ing] circumstances that indicate conscious behavior on the part of the defendants.") (citations omitted) (emphasis in *Dorsey*).  Plaintiff's conclusory allegations fail to meet the *Iqbal* pleading standards, let alone show that he is likely to succeed on the merits of his fraud claim.

### 4.    *Gross Negligence*

In Texas, "gross negligence is not a separate cause of action apart from negligence."[7] *RLI Ins. Co. v. Union Pac. R Co.*, 463 F. Supp.2d 646, 649-50 (S.D. Tex. 2006) (citing *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 557 (Tex.App.-Amarillo 1997, writ denied)).  "Rather, the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *Id.* (citing *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 641 (E.D. Tex. 1997)).  "[A] plaintiff cannot recover exemplary damages," however, "until he or she proves an entitlement to actual damages."  *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721-22 (Tex.App.-San Antonio 1994, writ denied) (citing cases); *accord Riley*, 973 F. Supp. at 648 ("Recovery of actual damages in tort is necessary to pursue a gross negligence claim").  In other words, a defendant "cannot be grossly negligent without being negligent." *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex.App.–Austin 1990, writ denied).

Plaintiff alleges that Defendants "were grossly negligent in that, either by act or omission,

---

[7]  The elements of a "negligence" cause of action under Texas law are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 2601526, at *6 (N.D. Tex. July 1, 2011) (citing *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005)). "Gross negligence" has two additional elements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002)); *see also* Tex. Civ. Prac. & Rem. Code § 41.001.

they exposed [him] to an extreme degree of risk of harm, considering the probability, magnitude and extent of the harm that would likely impact [him] and which ultimately did." (doc. 6 at 8.)  He also alleges that "Defendants had real, subjective awareness of the risks involved, but nevertheless proceeded with callous indifference to the rights, safety, and welfare of [him], physically and psychologically."  (*Id.*)  These assertions read more like a recitation of the elements of a gross negligence claim than specific allegations of wrongdoing. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555).  Plaintiff has therefore failed to show a likelihood of success on the merits of his purported gross negligence claim.

### B.      Irreparable Harm

To satisfy the second element of the preliminary injunction standard, the plaintiff must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey*, 647 F.3d at 600 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).

Although Plaintiff does not directly explain why the sale of the Property would cause irreparable harm, the loss of property has been found to cause an irreparable injury.  *See Belknap v. Bank of America, N.A.*, G-12-198, 2012 WL 3150271, at *3 (S.D. Tex. Aug. 1, 2012) (citation omitted); *see also U.S. v. Goltz*, SA-06-CA-503-XR, 2007 WL 295558, at *3 (W.D. Tex. Jan. 25 2007) (loss of property is usually considered an irreparable injury).  Irreparable harm alone will not support equitable relief, however, because "the likelihood of success is the 'main bearing wall'" of the test." *Belknap*, 2012 WL 3150271, at *3 (citation omitted); *see also Goltz*, 2007 WL 295558,

at *3.

## C.      Balance of Equities

The third element requires a preliminary injunction applicant to show that the threatened

injury outweighs any harm the injunction might cause.  *See Winter*, 555 U.S. at 23.  Plaintiff does

not address this element in his motions or second amended complaint.  (*See* docs. 6, 7, 46.)  He has

therefore also failed to meet his burden with respect to the third element of the preliminary

injunction standard, i.e., that the balance of equities weighs in his favor.  *See Thompson v. Hughes,*

*Watters & Askanase, LLP*, No. 3:13-CV-429-G-BH, 2013 WL 705123, at *3 (N.D. Tex. Jan. 31,

2013), *adopted by* 2013 WL 705883 (N.D. Tex. Feb. 27, 2013).

## D.      Public Interest

The fourth and final element requires a preliminary injunction applicant to show that the

injunction is in the public interest.  *Winter*, 555 U.S. at 20.  Plaintiff fails to address why enjoining

the foreclosure sale of the Property is in the public interest, and other courts have found that this

factor is neutral because only the parties to the suit are affected by an impending foreclosure sale.

*See Thompson*, 2013 WL 705123, at *3; *see also Belknap*, 2012 WL 3150271, at *3.

In conclusion, Plaintiff's unsupported conclusory statements are not sufficient to show

entitlement to preliminary injunctive relief. *See Preston v. Seterus, Inc.*, 3:12-CV-2395-L, 2012 WL

3848122, at *3 (N.D. Tex. Sept. 5, 2012) (citing *Hunt v. Bankers Trust Co.*, 646 F. Supp. 59, 66

(N.D. Tex. 1986)).  He has failed to carry his burden to show why a TRO or a preliminary injunction

should issue in this case.[8]

---

[8] Plaintiff also seeks to compel a non-party "Title Company" to pay funds purportedly in its possession "into
the Court escrow account to be held until the Court determines who get what of the deposited monies." (doc. 46 at 2.)
"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in*
*personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of

## IV. RECOMMENDATION

Plaintiff's motions should be **DENIED.**

**SO RECOMMENDED** on this 27th day of June 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *accord Martin v. Wilks*, 490 U.S. 755, 761 (1989). In fact, the Fifth Circuit has held that a "district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985). Because the "Title Company" is not a party to this lawsuit, the Court has no power to order it to deposit any funds in the context of this lawsuit.