**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **WILLIAM PAUL BURCH,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:18-CV-2731-M-BH** |
| | § | |
| **FREEDOM MORTGAGE** | § | |
| **CORPORATION, LOAN CARE** | § | |
| **SERVICING CENTER, AND** | § | |
| **JPMORGAN CHASE BANK,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Defendant Freedom Mortgage Corporation's Motion to Invoke Bankruptcy Reference*, filed November 20, 2018 (doc. 26), and *Plaintiff's Motion to Sell*, filed April 29, 2019 (doc. 65-1). Based on the relevant filings and applicable law, the defendant's motion should be **GRANTED,** and the case should be referred to the bankruptcy court.

## I. BACKGROUND

This case involves a dispute over property located at 1713 Enchanted Lane, Lancaster, Texas 75146 (the Property). (doc. 6 at 4.)[2] On September 20, 2018, William Paul Burch (Plaintiff) filed this suit against Freedom Mortgage Corporation (Freedom), Loan Care Servicing Center (LCSC), and JP Morgan Chase Bank (Chase) (collectively Defendants) in state court alleging fraud, gross negligence, violations of § 12.002 of the Texas Civil Practice and Remedies Code, and violations of the Texas Deceptive Trade Practices Act (DTPA).[3] (*See* doc. 1-3 at 8-45.)

---

[1] By *Special Order 3-251*, this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] On June 27, 2019, it was recommended that all claims against LCSC and Chase be dismissed with prejudice. (*See* doc. 74.) That recommendation is under review by the district court.

On or about November 17, 2006, Plaintiff's wife executed a promissory note (the Note) payable to the order of Freedom in the original principal amount of $104,250 (the Loan), as well as a deed of trust (the Deed of Trust) securing payment of the Note.  (docs. 1-3 at 18-36; 6 at 4.) Plaintiff also executed the Deed of Trust. (*See* doc. 1-3 at 35-36.) The Deed of Trust was made for the benefit of Mortgage Electronic Registration Systems, Inc. (MERS), acting solely as nominee for Freedom and its successors and assigns.  (doc. 14-1 at 3.)  Plaintiff contends that LCSC "was hired to service the Loan, effective November 28, 2006."  (doc. 6 at 4.)  On April 1, 2007, Chase began servicing the Loan.  (docs. 1-3 at 37; 6 at 4.)

On December 1, 2008, Plaintiff and his wife filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  *See In re William Burch and Juanita Burch,* No. 08-45761-rfn11 (Bankr. N.D. Tex.) (the First Bankruptcy).  On December 9, 2009, the bankruptcy court entered an order confirming their Third Amended Plan of Reorganization, which reaffirmed Chase's status as the mortgage holder on the Property and required Plaintiff to enter into a new note in the original principal amount of $68,000 (the First Plan).  (*id.,* doc. 246 at 13; doc. 6 at 4.)  The First Bankruptcy was closed on September 11, 2012.

On November 27, 2012, MERS assigned its interest in the Deed of Trust to Freedom.[4]  (docs. 14-1 at 23-24; 54 at 25-26.)  On December 28, 2012, Plaintiff filed for bankruptcy under Chapter 13 of the Bankruptcy Code.  *See In re William Paul Burch*, No. 12-46959-mxm7 (Bankr. N.D. Tex.) (the Second Bankruptcy).  The Second Bankruptcy was converted to Chapter 11 on December 23, 2013. (*id.*, doc. 100).  On February 1, 2016, the bankruptcy court entered an order confirming Plaintiff's Plan of Reorganization (the Second Plan).  (*id.*, doc. 188.)  The Second Plan, which was

---

[4] MERS executed a second assignment of its interest in the Deed of Trust to Freedom on January 13, 2014. (*See* doc. 54 at 28-29.)

accepted by Plaintiff and Freedom, provided in relevant part:

> [Freedom] shall retain its lien on the [Property]. [Plaintiff] shall retain the [Property] by paying the sum of $77,547.51 with four and one-half percent (4.5%) interest per annum in 360 equal monthly payments with the first being made on the first day of the month after the effective date of the Plan. [Plaintiff] shall resume making payment to Freedom for escrow of taxes for the [Property]. Freedom shall retain the right to declare a default, accelerate payments and foreclosure its lien should [Plaintiff] fail to make any payment within thirty (30) days of its due date.

(*Id.* at 11.)  It stated that the bankruptcy court "shall retain jurisdiction to the maximum extent possible to enforce the Plan, interpret the Plan, and provide for all proceedings and matters for which jurisdiction is preserved by the Plan, and otherwise." (*Id.* at 9.)

On January 30, 2018, the Second Bankruptcy was converted to Chapter 7.  (Second Bankruptcy, doc. 354.)  The bankruptcy court entered an order of discharge under 11 U.S.C. § 727, on June 13, 2018.  (*id.*, doc. 475.)  On August 16, 2018, the bankruptcy court granted the Chapter 7 trustee's request to abandon the Property, finding the abandonment "necessary and in the best interests of the Bankruptcy Estate and its creditors." (*id.,* doc. 586 at 1-2.)  The order provided that the bankruptcy court "retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order." (*Id.* at 2.)  The Second Bankruptcy case is still open.

On September 20, 2018, Plaintiff sued the defendants in state court.  (*See* doc. 1-3 at 8-45.)  On September 27, 2018, he filed an amended complaint that added his wife as a plaintiff, abandoned his original claims, removed LCSC and Chase as defendants, and asserted new claims against Freedom for quiet title, slander of title, and breach of contract, and that sought to enjoin it from foreclosing on the Property. (*See* doc. 1-3 at 67-83.)  On October 10, 2018, the state district court issued a temporary injunction restraining Freedom from foreclosing on the Property. (*Id.* at 97-98.)

3

On October 16, 2018, Freedom removed the suit, asserting diversity jurisdiction under 28 U.S.C. § 1332.  (*See* doc. 1.)  On October 28, 2018, Plaintiff filed a second amended complaint, which added the claims in his original complaint and LCSC and Chase as defendants.[5]  (*See* doc. 6.) It asserts claims for fraud, gross negligence, violations of § 12.002 of the Texas Civil Practice and Remedies Code, and violations of the DTPA and seeks "monetary relief of more than $10,000,000," compensatory, punitive, and exemplary damages, court costs, "reasonable attorney's fees pursuant to state statute," and pre- and post-judgment interest.  (*Id.* at 2-9.)

On November 20, 2018, Freedom filed a "Motion to Invoke Bankruptcy Reference." (doc. 26.)  Plaintiff responded on December 4, 2018.  (doc. 33.)  Freedom did not file a reply brief.  On April 29, 2019, Plaintiff filed a "Motion to Sell."  (doc. 65-1.)  Both motions are ripe for consideration.

## II.  MOTION TO REFER

Under 28 U.S.C. § 157(a), "each district court may provide that proceedings arising under title 11 as core proceedings or arising in or related to a case under title 11, shall be referred to the bankruptcy judges for the district."  Like most district courts, the Northern District of Texas has issued a standing order of reference.  *See* Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1983); *see also Oxford Expositions, LLC v. Questex Media Grp., LLC*, No. 3:10-CV-00095, 2011 WL 1135354, at *2 (N.D. Miss. Mar. 25, 2011) (while § 157(a) empowers district courts to refer all cases and proceedings to the bankruptcy court on a case-by-case basis, standing orders of reference have been entered by virtually all of the district courts).  Miscellaneous Order No. 33 provides that "any or all cases under

---

[5]  Plaintiff's wife is not listed as a plaintiff in the second amended complaint, and neither are the claims that were asserted against Freedom in the first amended complaint.

Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . [are to be] referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law." *Id.*[6]

Notwithstanding the automatic referral process in Miscellaneous Order 33, the district court retains discretion to refer cases to the bankruptcy court. *See Matter of Hipp, Inc.*, 895 F.2d 1503, 1514 (5th Cir. 1990). Cases should be referred if "(1) the proceeding is one that the Court would, indeed, normally refer to the bankruptcy court under Miscellaneous Order No. 33; and (2) the Court would be unlikely to withdraw the reference in any event—either, permissively, for cause, or because the opposing party could and would file a timely motion that would require withdrawal." *Texas United Hous. Program, Inc. v. Wolverine Mortg. Partner Ret.*, No. 3:17-CV-977-L, 2017 WL 3822754, at *3 (N.D. Tex. July 18, 2017) (citing 28 U.S.C. § 157(d)). Given the textual similarities between Miscellaneous Order No. 33 and § 1334(b), inherent in the first condition is a determination that bankruptcy jurisdiction exists. *See Tolliver v. Bank of New York Mellon*, No. 4:18-CV-00977-O-BP, 2019 WL 2541018, at *2 (N.D. Tex. Apr. 29, 2019). Accordingly, "where this Court's bankruptcy jurisdiction has been established, the matter should be referred to the Bankruptcy Court absent a compelling reason against referral." *Windham v. Mechanics Bank*, No. 314CV00087DMBSAA, 2016 WL 129521, at *3 (N.D. Miss. Jan. 12, 2016).

A.    <u>**Bankruptcy Subject Matter Jurisdiction**</u>

Freedom removed this case based solely on diversity jurisdiction under § 1332, and now seeks to refer the case to the bankruptcy court under § 157. "28 U.S.C. § 157 does not give

---

[6] Miscellaneous Order No. 33 largely mirrors 28 § 1334(b), which confers bankruptcy subject matter jurisdiction on federal courts. *See* 28 U.S.C. § 1334(b) (granting jurisdiction to district courts and adjunct bankruptcy courts to hear proceedings "arising under," "arising in a case under" or "related to" a case under title 11).

bankruptcy courts jurisdiction beyond that granted by section 1334; it merely allows district courts to assign cases to bankruptcy courts." *In re The Heritage Organization, L.L.C.*, 454 B.R. 353, 359 fn.4 (2011) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)). Accordingly, bankruptcy subject matter jurisdiction must first be established before a case may be referred to the bankruptcy court. *See In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) (citing *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times.").

"While all federal courts are courts of limited jurisdiction, defined by the Constitution and statute, a bankruptcy court's jurisdiction is even more restricted and wholly defined by statute. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. CIV.A. G-02-0299, 2002 WL 32107216, at *6-7 (S.D. Tex. Aug. 12, 2002) (citing 28 U.S.C. § 1334(b). "The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002) (citation omitted). Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) "cases under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. *In re U.S. Brass Corp.*, 301 F.3d at 303 (citing 28 U.S.C. § 1334(a)-(b)). The first category refers to the bankruptcy petition itself, while the remaining categories "operate conjunctively to define the scope of jurisdiction." *Id.*

A proceeding "arises under" title 11 "if it invokes a substantive right provided by title 11." *Southmark v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 930 (5th Cir. 1999); *see Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding . . ."). A proceeding "arises in" a case under

title 11 if it, "by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97 ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding . . ."); *Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3rd Cir. 2006)).   A proceeding is "related to" a case under title 11 if the proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d at 1022.   The category of "related to" actions is quite broad and includes proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.6 (1995) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).   "Because the definitional phrases 'arising under,' 'arising in a case under,' and 'related to a case under' operate conjunctively, 'it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'" *Grant v. Askanase*, No. CIV.A. H-09-3964, 2010 WL 3791264, at *7 (S.D. Tex. Sept. 24, 2010) (quoting *In re Wood*, 825 F.2d at 93).[7]

Although "[s]ection 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," the scope of a bankruptcy court's jurisdiction is somewhat circumscribed after the bankruptcy plan has been confirmed. *Galaz v. Katona*, No. 5:14-CV-967, 2015 WL 5565266, at *4 (W.D. Tex. Sept. 21, 2015) (quoting *In re U.S. Brass Corp.*, 301 F.3d at 303-04).  Post-confirmation

---

[7] "While courts may choose to rely on 'related to' jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because . . . a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as 'arising in' jurisdiction . . ." *In re Cano*, 410 B.R. 506, 546 (Bankr. S.D. Tex. 2009) (quoting *In re Seven Fields*, 505 F.3d at 260).

jurisdiction of a bankruptcy court is generally limited to "matters pertaining to the implementation or execution of the plan." *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001). Nevertheless, it is well-established that "[a] bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'" *Id.* (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Bankruptcy courts therefore "retain significant jurisdiction after a discharge order is issued and a case is closed over matters concerning the interpretation and enforcement of bankruptcy court orders and important substantive rights granted by the Bankruptcy Code–even if the claims would not affect the bankruptcy estate." *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757, at *3 (N.D. Tex. May 15, 2014) (citing *Travelers Indem. Co.*, 557 U.S. at 151-52). "Such matters fall within the Court's 'arising in' and 'arising under' jurisdiction," and are independent bases of jurisdiction under § 1334. *In re Cano*, 410 B.R. at 546 (citing *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997)).

Here, Plaintiff's second amended complaint asserts violations of the fraudulent lien statute under § 12.002, violations of the DTPA, common law fraud, and gross negligence. (doc. 6 at 2-9.) It alleges that the First Plan required Defendants to issue a new note on the Property, and that because they failed to issue a new note, the Note and Deed of Trust were "invalidated" upon the final discharge in the First Bankruptcy. (*Id.* at 4-5.) It also alleges that although Freedom's lien on the Property was initially reestablished by the confirmation plan in the Second Bankruptcy, the lien is no longer valid because Freedom "has not adhered to the plan." (*Id.* at 6.) Plaintiff claims that "the wording [in the First Plan] clearly defines the new note," but "there is still no promissory note on the [P]roperty." (*Id.*) He also contends that someone "agreed to buy the [P]roperty in March

2016, but Freedom would not send a correct payoff so that the loan could be closed," and that Freedom violated the Second Plan because it has not "released the lien." (*Id.* at 6-7.)

These causes of action bear on the interpretation and enforcement of each bankruptcy plan and order of discharge, which is within the bankruptcy court's 'jurisdiction to interpret and enforce its own prior orders.'" *In Matter of Galaz*, 841 F.3d at 322 (quoting *Travelers Indem. Co.*, 557 U.S. at 151). While Plaintiff notes that his Chapter 7 bankruptcy has been discharged, plan confirmation and discharge does not entirely eliminate bankruptcy jurisdiction. *See In re U.S. Brass Corp.*, 301 F.3d at 304; *Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ) v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ))*, 333 F. App'x 822, 826 (5th Cir. 2009) ("A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders."). Further, the Second Plan specifies that the bankruptcy court "shall retain jurisdiction to the maximum extent possible to enforce the Plan, interpret the Plan, and provide for all proceedings and matters for which jurisdiction is preserved by the Plan." (Second Bankruptcy, doc. 188 at 9.) Because the Second Plan was not confirmed until 2018, the claim that Freedom failed to comply with the plan in March 2016 is a pre-confirmation claim that directly implicates the "implementation or execution of the plan." *See In re Craig's Stores of Texas, Inc.*, 266 F.3d at 390-91. Plaintiff also alleges that Freedom has not adhered to the plan because "there still is no [new] promissory note on the property." (doc. 6 at 6.) The Second Plan does not include a provision requiring Freedom to issue a new note, and Plaintiff does not identify another order from the Second Bankruptcy with such a provision. Even if Freedom was required to issue a new note under the Second Bankruptcy, Plaintiff's claim that its lien was invalidated upon discharge likewise implicates the "implementation

or execution of the plan."  See *In re Craig's Stores of Texas, Inc.*, 266 F.3d at 390-91.

Although the Chapter 7 trustee in the Second Bankruptcy ultimately abandoned any interest in the Property, the bankruptcy court continues to retain jurisdiction to interpret and enforce its own orders, and has subject matter jurisdiction over the claims in this case.  *In re Nat'l Gypsum Co.*, 118 F.3d at 1062 (noting that the bankruptcy court still had "arising under" jurisdiction even though the complaint asserted claims that could not affect the bankruptcy estate); *see, e.g., In re Cano*, 410 B.R. at 544 ("The Fifth Circuit has left no doubt that bankruptcy courts have 'arising under' subject matter jurisdiction over adversary proceedings alleging violations of a confirmed plan.") (citing *Mackey v. M.C. Invs. (In re Martinez)*, No. 00-40412, 2000 WL 34508398 at *1 (5th Cir. Oct. 5, 2000)).

**B.**     **§ 157 and Miscellaneous Order No. 33**

Freedom seeks reference of this case to the bankruptcy court under § 157 and Miscellaneous Order 33 because Plaintiff's claims are "core proceedings" under § 157(b)(2)(K) and "'arise in' bankruptcy, as the claim that Freedom's lien does not exist by virtue of the various bankruptcy orders 'would have no existence outside the bankruptc[ies].'" (doc. 27 at 3.)[8]

Section 157 lists the cases and proceedings that "fall[] within the jurisdictional grant of § 1334," and may be "referred" to the bankruptcy courts.  *In re U.S. Brass Corp.*, 301 F.3d at 304 (citing 28 U.S.C. § 157(a)-(b)).  It also specifies the bankruptcy court's adjudicative authority on matters referred to it by the district court.  *Id.*  Under § 157(b), a bankruptcy court is empowered to "hear and determine" the bankruptcy petition itself, as well as all "core" proceedings, and "may

---

[8]  Freedom alternatively argues that referral of this case under Miscellaneous Order No. 33 is appropriate because "at a minimum, Plaintiff's claims are 'related-to' the Second Bankruptcy case." (doc. 27 at 3.) Because the case should be referred to the bankruptcy court as a core proceeding "arising under" bankruptcy, it is not necessary to reach this argument.

10

enter appropriate orders and judgments," subject to appellate review by the district court. *See* 28 U.S.C. § 157(b)(1). "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97. Put simply, "'[a]rising under' and 'arising in' proceedings are 'core proceedings.'" *In re Talsma*, 509 B.R. 535, 541 (Bankr. N.D. Tex. 2014). A nonexclusive list of examples of core proceedings is set out in § 157(b)(2). *In re U.S. Brass Corp.*, 301 F.3d at 304.

Bankruptcy courts may also hear non-core proceedings that are "otherwise related to a case under title 11," but "any final order or judgment must be entered by the district court." *In re U.S. Brass Corp.*, 301 F.3d at 304 (citing 28 U.S.C. § 157 (c)(1)). A non-core proceeding is one that "does not invoke a substantive right created by the federal bankruptcy law and . . . could exist outside of bankruptcy." *Id.* In other words, "it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *In re Wood*, 825 F.2d at 97.

"[W]hether a matter can be referred to a bankruptcy judge under § 157(a) and whether the matter is within the jurisdiction of the bankruptcy court involve the same inquiry: "if a case concerns core proceedings or non-core proceedings that are related to Title 11 actions, that case is within the jurisdiction of the bankruptcy court and can be referred to the bankruptcy judge." *Eggers v. TVZ Records, LLC*, No. A-08-CA-668-SS, 2010 WL 11506652, at *2 (W.D. Tex. Jan. 22, 2010) (citations omitted).

Notwithstanding the bankruptcy court's post-confirmation jurisdiction over this case, it may also be referred as a core proceeding that arises in the Second Bankruptcy. As noted, the second

amended complaint alleges that Freedom's lien on the Property was invalidated under the confirmation plans in both bankruptcy cases. It also alleges that Freedom's lien was created by the Second Plan, but was subsequently eliminated due to violations of the Second Plan by Freedom. The case is a "core proceeding" because the analysis of Plaintiff's claims involve "determinations of the validity, extent, or priority of liens." *See* 28 U.S.C. § 157(b)(2)(K). It is also based on Freedom's lien and Plaintiff's superior title interest in the Property, which are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d at 97.

Although Plaintiff maintains that his DTPA and fraudulent lien claims have nothing to do with the bankruptcy case, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *See* 28 U.S.C. § 157(b)(3). State law claims "may be considered core if they are dependent upon the rights created in bankruptcy." *In Matter of Galaz*, 841 F.3d at 323 (quoting *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 305 (5th Cir. 2013) (citations and internal quotation marks omitted)). That is the case here because Plaintiff alleges that the bankruptcy plans "invalidated" the note and resulted in his superior title to the Property. Additionally, the state law claims asserted in the second amended complaint bear on the interpretation of the confirmation plan in the Second Bankruptcy. *In Matter of Galaz*, 841 F.3d at 323 (finding that state law claims based on the alleged violation of a debtor's discharge rights are "within the bankruptcy court's post-confirmation jurisdiction," even though the bankruptcy case was closed).

Plaintiff maintains that the case must be decided by the district court because it "meet[s] the criteria to be heard in the District Court also," and he cites *Peck v. Asset Management Associates,*

*LLC*, No. 3:17-CV-2923-N, 2018 WL 3455511 (N.D. Tex. July 18, 2018), as support for this argument. (doc. 33 at 1.)  In *Peck* the original tenant under a commercial lease filed for bankruptcy, and a sale order was issued by the bankruptcy court that assigned the lease to a new tenant.  *Peck*, 2018 WL 3455511, at *1.  The bankruptcy court also made a finding that no cure amounts were owed under the lease.  After the sale order was entered, the landlord demanded payment from the guarantors of the lease for the debtor's past-due rent.  The guarantors filed suit in district court against the lessor seeking declaratory judgment that they were not liable under the lease based on the bankruptcy court's sale order.  The landlord moved to transfer the case to the bankruptcy court on grounds that the dispute required interpretations of the bankruptcy court's sale order.

The district court ultimately denied the motion to transfer finding the bankruptcy court lacked both "core" and "non-core" subject matter jurisdiction over the dispute.  *Id.* at *4.  It determined that there was no "core" jurisdiction because the dispute did not "arise under" title 11 as the guarantor did not "advance any cause of action created by the U.S. Bankruptcy Code."  It also determined there was no "arising in" jurisdiction because the guarantor's claims, which concerned state law questions of guarantor liability, could exist outside of the bankruptcy case.  The district court concluded that the bankruptcy court also lacked "non-core" jurisdiction because the dispute did not "relate to" the bankruptcy case.  It noted that the case was between two nondebtors concerning questions of state law, and no matter the outcome, it "[would] not affect the debtor's 'rights, liabilities, options, or freedom of action' in any way."  *Id.* at *4 (quoting *Kimpel v. Meyrowitz,* Adv. No. 10-03227, 2010 WL 5292066, at *5 (Bankr. N.D. Tex. Dec. 20, 2010).  Because no set of circumstances existed under which the dispute might have affected the debtor, the district court found that non-core jurisdiction was also lacking.

Unlike *Peck*, the dispute in this case is between the debtor and a creditor from both bankruptcy cases and involves claims that arise under the Second Bankruptcy. Moreover, the fact that the district court and the bankruptcy court share subject matter jurisdiction does not preclude a bankruptcy reference. The district court has original jurisdiction over all matters of bankruptcy, but is statutorily permitted to refer certain proceedings to the bankruptcy court. *See* 28 U.S.C. §§ 157, 1334. To the extent Plaintiff contests the reference because it involves non-core proceedings, bankruptcy courts are also authorized to hear non-core matters and issue proposed findings of fact and conclusions of law to the district court. *See In re U.S. Brass Corp.*, 301 F.3d at 304 (citing 28 U.S.C. § 157 (c)(1)).[9]

Because the second amended complaint asserts claims that are core proceedings, the bankruptcy court has subject matter jurisdiction, and reference to the bankruptcy court under § 157 and Miscellaneous Order No. 33 is appropriate.

## C.    <u>Likelihood of Withdrawal</u>

Before a case is referred to a bankruptcy court under § 157 and Miscellaneous Order No. 33, a court should also consider the likelihood that the reference would be withdrawn "—either, permissively, for cause, or because the opposing party could and would file a timely motion that would require withdrawal." *Texas United*, 2017 WL 3822754, at *3 (citing 28 U.S.C. § 157(d)).

### 1.    *Mandatory Withdrawal Provision*

Under the mandatory withdrawal provision of § 157(d), a district court must withdraw a proceeding if, upon a timely motion by a party, the court determines "resolution of the proceeding

---

[9] Plaintiff also opposed bankruptcy reference on the ground that his motion to recuse the bankruptcy judge was pending appeal before the district court. The district court denied his appeal of the motion on December 19, 2018, so this argument is moot. (Second Bankruptcy, doc. 685.)

requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *See* 28 U.S.C. § 157(d). The "consideration" of non-title 11 federal law must be "substantial and material," which would require the court to "undertake analysis of significant open and unresolved issues regarding the non-title 11 law"—"rather than the mere application of well-settled law." *Texas United*, 2017 WL 3822754, at * 7 (citing *Rodriguez v. Countrywide, Home Loans, Inc.*, 421 B.R. 341, 347 (S.D. Tex. 2009) (citations and internal quotation marks omitted)). In other words, there are unsettled questions of law that must be considered in order to evaluate the proceeding. *Id.*

Plaintiff's second amended complaint asserts violations of the fraudulent lien statute under § 12.002, violations of the DTPA, common law fraud, and gross negligence. There are no unsettled questions of law presented by these claims. The recommended dismissal of the claims against Chase and LCSC further demonstrates that the resolution of the same claims against Freedom will require nothing beyond the application of well-settled law. Accordingly, the mandatory withdrawal provision is inapplicable.

### 2. *Permissive Withdrawal Provision*

Under the permissive withdrawal provision of § 157(d), a district court may "withdraw a case that it would typically refer to the bankruptcy court, on its own motion or on timely motion, 'for cause shown.'" *Texas United*, 2017 WL 3822754, at *9. Nevertheless, district courts should not withdraw reference of a "core proceeding" unless its withdrawal is based on sound foundation. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). In determining whether adequate foundation for withdrawal exists, district courts should consider the following list of non-exhaustive factors: "(1) whether the proceedings are "core" proceedings; (2) the effect of the

15

withdrawal on judicial efficiency; (3) uniformity in bankruptcy administration; (4) reduction in forum shopping; (5) fostering the economical use of the debtors' and creditors' resources; (6) expediting of the bankruptcy process; and (7) whether or not there is a jury demand." *United States v. Miller*, No. 5:02-cv-168-C, 2003 WL 23109906, at *4 (N.D. Tex. Dec. 22, 2003) (citing *Holland America*, 777 F.2d at 998).

Based on these factors, there does not appear to be any cause for permissive withdrawal. First, the claims asserted in the second amended complaint appear to constitute core proceedings.[10] Freedom contends that the case involves "determinations of the validity, extent, or priority of liens," which is an example of a core proceeding under § 157(b)(2)(K). (*See* doc. 27 at 5.) Plaintiff argues that the case has no bearing to a core proceeding under § 157(b)(2)(K). As noted, however, he challenges the validity of the Note and the Deed of Trust, which directly implicates Freedom's lien on the Property. Further, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97. Whether Freedom's lien on the Property is valid is central to the causes of action in second amended complaint, and the issues presented relate to violations of the Second Plan. These claims arise under title 11 and are within the bankruptcy court's core subject matter jurisdiction. *See Stern v. Marshall*, 564 U.S. 462, 476 (2011).

Second, withdrawing the reference will not promote judicial efficiency, uniform bankruptcy administration, economical use of the resources of the debtors and creditors, or expeditious administration of the bankruptcy plan. The bankruptcy court will be in a better position to

---

[10] Because bankruptcy courts are better suited to determine the scope of their jurisdiction (i.e., whether a proceeding is "core" or "non-core"), the bankruptcy court should make the ultimate determination of whether it has subject matter jurisdiction upon reference. *See* 28 U.S.C. § 157(b)(3).

efficiently decide this case as it will be interpreting the bankruptcy plan it entered and determining the effects of its orders and rulings. Notably, Plaintiff has filed similar causes of action involving other properties that were also in the bankruptcies, which are currently pending before the bankruptcy court in three adversary cases in the Second Bankruptcy.[11] Given the similarities, keeping all the cases with the bankruptcy court will promote uniformity in bankruptcy administration and streamline the disposition of these cases, as it will be "bringing all matters related to the debtor and his assets into a single forum." *See Eggers v. TVZ Records, LLC et al.*, No. A-08-CA-668-SS, 2010 WL 11506652, at *2 (W.D. Tex. Jan. 22, 2010). Further, referring this case to the bankruptcy court will also reduce forum shopping, preserve the resources of the debtors and creditors, and expedite the resolution of pending matters in the Second Bankruptcy. Finally, although Plaintiff demands a jury trial, "courts generally do not withdraw a reference on this basis 'until it is readily apparent that [the plaintiff's] jury trial rights are jeopardized.'" *Texas United*, 2017 WL 3822754, at *9 (quoting *In re Efficient Solutions, Inc.*, No. Civ. A. 00-3071, 2000 WL 1876356, at *7 (E.D. La. Dec. 20, 2000) (citations omitted)). Accordingly, it is unlikely that cause for permissive withdrawal will be established in this case.

### III. RECOMMENDATION

Freedom's motion should be **GRANTED,** and this case, along with Plaintiff's Motion to Sell (doc. 65-1), should be referred to the Bankruptcy Court of the Northern District of Texas as a case related to *In re William Paul Burch*, No. 12-46959-mxm7 (Bankr. N.D. Tex.).

---

[11] *See Burch v. America's Servicing Company et al.,* No. 4:18AP4172-mxm (Bankr. N.D. Tex.); *Burch v. Hughes Watters Askanase et al.,* No. 4:18AP4176-mxm (Bankr. N.D. Tex.); *Burch v. Ocwen Loan Servicing Company,* No. 4:19AP4039-mxm (Bankr. N.D. Tex.).

**SO RECOMMENDED** on this 12th day of July 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE